UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.: 1:19 CR 705 |
| Plaintiff | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| AARON L. GAGE, | ) | |
| Defendant | ) | ORDER |

Currently pending before the court in the above-captioned case is Defendant Aaron L. Gage's ("Defendant" or "Gage") Motion for Bond and Motion for Emergency Intervention by the Court ("Motion"). (ECF No. 16.) For the following reasons, the court denies Gage's Motion.

## I. BACKGROUND

On November 7, 2019, a federal grand jury charged Defendant with one count of being a felon in possession of a firearm, in violation of 21 U.S.C. § 922(g)(1) and § 924(a)(2). (Indictment, ECF No. 6.) This charge stemmed from Defendant's arrest from a Motel 6 in North Ridgeville, Ohio, and a search his room, which revealed a loaded .380 caliber handgun. (Presentence Investigation Report ("PSR") at PageID #45–46, ECF No. 13.) Three small children and two adults were also inside the motel room. (*Id.* at PageID #46.) Gage admitted that he possessed the handgun to protect his family. (*Id.*) Leading to this arrest and search, Defendant was allegedly involved in two shootings that took place in Elyria, Ohio and Lorain, Ohio, the latter of which resulted in Defendant's father being shot. (*Id.*)

Defendant waived a detention hearing and, pursuant to the Government's motion, the Magistrate Judge ordered Defendant detained pending trial. (Order, ECF No. 8.) But now, Defendant maintains that there are "compelling reasons" under 18 U.S.C. § 3142(i)—namely, the ongoing public health crisis caused by COVID-19—warranting his release. (*See* Mot. at PageID #60, ECF No. 16.) The Government filed a Response in Opposition (ECF No. 21) on May 6, 2020. Gage filed two Supplements to his Motion, which provide detailed qualifications of experts and/or expert reports concerning the conditions at Northeast Ohio Correctional Center ("NEOCC"), where Gage is being held. (*See* ECF Nos. 17 and 22.) Gage filed his Reply on May 12, 2020. (ECF No. 23.)

## II. LAW AND ANALYSIS

### A.  18 U.S.C. § 3142(e)

Under 18 U.S.C. § 3142(e), pretrial detention is required if the court finds that no condition or combination of conditions of release will reasonably assure the safety of the community or that defendant will appear as required at future proceedings. While the government must show clear and convincing evidence that the defendant poses a risk to the community if released, it needs to show only a preponderance of evidence that defendant is a flight risk. *See* 18 U.S.C. §§ 3142(e)–(f); *see also, e.g.*, *United States v. Tortora*, 922 F.2d 880, 883–84 (1st Cir. 1990) (holding that government must prove by clear and convincing evidence that defendant poses a danger to community); *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007) (holding that government must prove by preponderance of the evidence that defendant presents a flight risk); *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004) (same). A finding that the defendant is either a flight risk or a danger to the community supports a detention order; proof of both is not necessary. *See United States v. Ferranti*, 66 F.3d 540, 543–44 (2d Cir. 1995).

To determine whether any conditions exist that will reasonably assure the community's safety and the defendant's appearance at trial, courts consider the factors set forth in 18 U.S.C. § 3142(g). These factors include: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including their character, mental and physical condition, family and community ties, employment status, financial resources, criminal history, substance-abuse history, and probation or supervised release status; and (4) the nature and seriousness of the danger posed to the community by the defendant's potential release. 18 U.S.C. § 3142(g).

In his Motion, Defendant asks this court to order that he be temporarily released pursuant to § 3142(i).[1] (Mot. at PageID #61, ECF No. 16.) This request essentially asks the court revoke the Magistrate Judge's detention order. A district court reviews a magistrate judge's detention order "de novo and must make an independent determination of the proper pretrial detention or conditions for release." *United States v. Amir*, No. 1:10-CR-439, 2011 WL 2711350, at *3 (N.D. Ohio July 13, 2011) (quoting *United States v. Rueben*, 974 F.2d 580, 585 (5th Cir. 1992)). This means "the district court should engage in the same analysis, with the same options, under § 3142 as the magistrate judge." *United States v. Yamini*, 91 F. Supp. 2d 1125, 1129 (S.D. Ohio 2000).

After *de novo* review of the parties' arguments and other relevant portions of the record, the court finds that no condition or combination of conditions will reasonably assure the community's

---

[1] Defendant does not request a detention hearing, and one is not required. Under 18 U.S.C. § 3142(f), a court can reopen a detention hearing if "information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." But as discussed later, COVID-19 has no bearing on Defendant's flight risk or dangerousness. *See United States v. Aiad-Toss*, No. 4:19-CR-00521, 2020 WL 1514482, at *2 (N.D. Ohio Mar. 30, 2020).

-3-

safety. As an initial matter, the court notes that Defendant's Motion does not mention the § 3142(g) factors at all. (*See* Mot., ECF No. 16.) Rather than engage with those factors, Gage's Motion focuses almost entirely on the "compelling reasons" for release under § 3142(i) brought about by the ongoing pandemic. (*Id.* at PageID #61–64.) But COVID-19 has no bearing on whether Defendant is a flight risk or a danger to the community. Accordingly, it does not factor into the court's § 3142(e) analysis. By contrast, the Government argues "[t]he facts of Defendant's underlying case, his criminal history of trafficking, firearms, violent crimes, gang designation, and repeated reoffending shortly upon release from prison demonstrates that no combination of conditions will reasonably assure the safety of the community." (*See* Opp'n at PageID #135–38, ECF No. 21; *see* PSR at PageID #45–51 (describing the instant offense conduct and Gage's extensive criminal history).)

Having reviewed the parties' arguments and evidence, the court finds that Defendant is a flight risk and a danger to the community. The nature of the charges, which involves Defendant's possession of a loaded handgun in a motel room with three small children, supports a finding that he presents a danger to the community. The PSR's indication that Gage was involved in two shootings, one of which resulted in his own father being shot, further supports this finding. (*See* PSR at PageID #46.) Moreover, as the Government points out, Gage has an extensive criminal history involving, among other things, drug trafficking, escape, and resisting arrest. (*Id.* at PageID #47–51.) In addition, Defendant does not allege that he has any COVID-19 symptoms or that he has been exposed to any individuals with the virus or symptoms of the virus. His bare assertion that he has a body mass index over 40, which creates the risk of severe COVID-19 disease, is insufficient. (*See* Mot. at PageID #60, ECF No. 16.)

In his Motion and Reply, Gage maintains that Dr. Venktesh R. Ramnath ("Dr. Ramnath") opined that he has "a 3.6x risk of severe COVID[-]19 disease" because he is obese. (*Id.* at PageID

-4-

#62; Reply at PageID #247, ECF No. 23.) Dr. Ramnath's report further provides that obese persons are likely to have asthma and metabolic syndrome. (*See* Ramnath Report at PageID #81, ECF No. 16-1.) Because the report is redacted, however, the court cannot ascertain whether Dr. Ramnath is actually referring to Gage. (*See* Ramnath Report, ECF No. 16-1.) In any event, as explained below, the court does not find that Defendant's obesity alone is sufficiently compelling to warrant release.

Based on the § 3142(g) factors, no condition or combination of conditions of release can reasonably assure the community's safety or Defendant's presence at trial. Consequently, the court finds that § 3142(e) requires pretrial detention.

**B.     18 U.S.C. § 3142(i)**

Defendant argues that the ongoing public health crisis surrounding COVID-19 constitutes a "compelling reason" justifying his release. (Mot. at PageID #61, ECF No. 16.) The Government counters that release is not appropriate because Gage is 26 years old and has failed to produce evidence indicating that he has any health conditions that would increase his risk of contracting COVID-19. (Opp'n at PageID #144, ECF No. 21.) The court will address their arguments in turn.

Pursuant to § 3142(i), a district court can order the temporary release of a defendant awaiting trial "to the extent that the [court] determines such release to be necessary for preparation of the [defendant's] defense or for another compelling reason." Defendants seeking release due to COVID-19 increasingly have turned to this compelling–reason provision for relief. *See United States v. Wilburn*, No. 2:18-CR-115, 2020 WL 1899146, at *3 (W.D. Pa. Apr. 17, 2020) ("[U]ntil the emergence of the coronavirus pandemic, there was relatively little case law on interpreting § 3142(i)'s 'compelling reason' prong.") Facing a flood of these motions, many district courts across the country, including several within the Sixth Circuit, have adopted the framework from *United States v. Clark*, No. 19-40068, 2020 WL 1446895 (D. Kan. Mar. 25, 2020), which weighs

-5-

> (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

*Id.* at *3; *see also, e.g.*, *United States v. Morale*, No. 5:19-CR-741, 2020 WL 1984900, at *2 (N.D. Ohio Apr. 27, 2020) (applying *Clark* factors and denying release); *United States v. Smoot*, No. 2:19-CR-20, 2020 WL 1501810, at *2–3 (S.D. Ohio Mar. 30, 2020) (same); *United States v. Brown*, No. 3:19-CR-131, 2020 WL 1914818, at *3–6 (W.D. Ky. Apr. 20, 2020) (same); *United States v. Knight*, 2020 WL 1676959, at *2, 7, 9, 14 (D. Nev. 2020) (same); *United States v. Hart*, No. 1:19-CR-318, 2020 WL 1814143, at *4 (M.D. Pa. Apr. 9, 2020) (applying *Clark* factors and granting release). In a slightly modified approach, a sister district court in this Circuit instead considered

> (1) the nature, seriousness, and specificity of the defendant's stated COVID-19 concerns (e.g., underlying medical conditions, age, etc.); (2) the conditions in the facility where the defendant is being held (e.g., social distancing measures, screening protocols for new prisoners, the number of prisoners diagnosed with COVID-19, and availability of appropriate medical treatment); (3) whether conditions of release can be imposed to mitigate COVID-19 risks to the defendant and to the community; (4) the original grounds for the defendant's pretrial detention.

*United States v. Sanders*, No. 2:19-CR-20288, 2020 WL 1904815, at *3 (E.D. Mich. Apr. 17, 2020). Although *Sanders* involved a defendant awaiting sentencing who sought release under 18 U.S.C. § 3145(c)'s "exceptional reasons" provision, the *Sanders* court noted the similarity to § 3142(i) and drew heavily on the *Clark* framework for guidance. *Id.* at *3 ("The Court nonetheless finds the [*Clark*] factors . . . helpful to assessing whether release is warranted in this case.") Unsurprisingly, then, the *Clark* and *Sanders* approaches overlap significantly. But one key difference is that the *Sanders* approach "explicitly require[s] the [c]ourt to consider the actual conditions in the facility where the defendant is being held." *Id.* at *3. Because the court deems it appropriate to consider on-the-ground conditions in prison facilities during this public health crisis—and given the analytical

similarity between "compelling reasons" under § 3142(i) and "exceptional reasons" under § 3145(c)—the court adopts the *Sanders* approach to evaluate Defendant's claim to relief.

Applying the *Sanders* factors here, the court finds that release is not appropriate. The first and second factors do not support release because Defendant has not offered any particularized concerns regarding his own health status or the conditions at his facility. Gage's bare assertion that he has a body mass index over 40 and is therefore likely to become severely ill if he contracts COVID-19 while in detention is insufficient.[2] *See, e.g., United States v. Lee*, No. ELH-19-159, 2020 WL 1974881, at *6 (D. Md. Apr. 24, 2020) (denying motion for release under § 3142(i) where defendant was obese, had high blood pressure, and suffered from depression); *United States v. Zamorano*, No. 1:19-cr-00531-WJM, 2020 U.S. Dist. LEXIS 63641, at *10 (D. Colo. Apr. 10, 2020) (denying motion for release and finding the defendant failed to present a compelling reason for release under § 3142(i) where the defendant was "morbidly obese"); *United States v. Petway*, No. 2:17cr00534 (KM), 2020 U.S. Dist. LEXIS 82954, at *12 (D.N.J. May 11, 2020) (denying the defendant's motion for release that was brought under § 3142(i) where the defendant was obese and had high blood pressure). Indeed, this argument is general and speculative.

Further, the record is devoid of medical records substantiating Gage's health status. The court does not question the seriousness or sincerity of Defendant's concerns, but his generalized fears regarding the virus—which are equally applicable to all inmates across the country—do not

---

[2] In his Reply, Gage argues, for the first time, that his pretrial detention violates the Fifth and Eighth Amendments. (*See* Reply at PageID #243–47, ECF No. 23.) Having the benefit of counsel to prepare his Motion, Defendant should be well aware that it is not appropriate to raise issues for the first time in a reply brief. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008). Indeed, doing so is particularly unfair because it prevents the opposing party from presenting a counter-argument to the court. *Id.* Therefore, the court declines to address this argument.

constitute a "compelling reason" for release. Simply put, Defendant has not identified any specific or well-documented health condition or heightened risk factor that he faces, nor has he provided any information regarding confirmed or suspected cases of COVID-19 at NEOCC. To the contrary, data from the Ohio Department of Rehabilitation and Correction shows that, as of May 11, 2020, four staff members at NEOCC have tested positive for COVID-19 but no inmates have. *COVID-19 Inmate Testing*, Ohio Dep't of Rehabilitation & Corrections (May 11, 2020), http://coronavirus.ohio.gov/static/DRCCOVID-19Information.pdf. Furthermore, the Government has submitted sufficient evidence indicating that NEOCC has implemented extensive social distancing measures, screening protocols for new prisoners (and all other persons entering the facility), prevention and treatment, surveillance, and infection control. (*See* Exhibits 3–16 to Opp'n, ECF No. 21.)

The third factor is inconclusive. Defendant's Motion states that his girlfriend will provide a safe residence for him where he will not be exposed to COVID-19. (Mot. at PageID #63, ECF No. 16.) To the extent Defendant abides by public health orders and social distancing guidelines, his release to home confinement may not increase the risk of COVID-19 transmission to himself, his family, or the community. But as the Government notes, releasing Defendant means increased exposure to COVID-19 for the Probation and Pretrial Services Officers tasked with monitoring him following his release. (Opp'n at PageID #153–54.) Further, contrary to Defendant's assertion, this potential exposure is not eliminated because Pretrial Services is able to do virtual home visits. (Reply at PageID #247.) Indeed, virtual home visits are not necessarily feasible for every defendant. Finally, as discussed above, the fourth factor counsels in favor of continued detention. Accordingly, after weighing the relevant factors, the court finds that there is no "compelling reason" to justify Gage's release.

## C. Defendant's Recommended Mitigation Strategies

Alternatively, Gage asks the court to order that NEOCC implement ten mitigation strategies as recommended by Defendant's expert, Dr. Ramnath, who prepared an extensive report regarding the conditions at NEOCC. (*See* Mot. at PageID #65–67, ECF No. 16; *see also* Ramnath Report, ECF No. 16-1.) Defendant also highlights an affidavit prepared by Dr. Homer Venters, which corroborates Dr. Ramnath's findings, and makes other recommendations regarding what NEOCC should do to mitigate the spread and effect of COVID-19. (*See* Supplement at PageID #206, ECF No. 21; *see also* Venters Affidavit, ECF No. 22-1.) The Government maintains that NEOCC has implemented procedures in response to the COVID-19 pandemic that are consistent with guidance that the Centers for Disease Control and Prevention ("CDC") has provided for correctional and detention facilities. (Opp'n at PageID #146, ECF No. 21.) The Government also argues that most of Dr. Ramnath's recommendations have already been considered and implemented by NEOCC and the recommendations that have not been implemented are not feasible for the facility. (*Id.* at PageID #147–53.) Finally, the Government maintains that Dr. Ramnath's recommendations have no bearing on whether Defendant is a flight risk or a danger to the community. (*Id.* at PageID #148–49.)

Having considered the parties' arguments and evidence, the court declines to order NEOCC to adopt Dr. Ramnath's recommendations. Based on the Government's Exhibits (3–16 to Opp'n, ECF No. 21), it is clear that NEOCC has implemented sufficient procedures in response to COVID-19 that are aimed at mitigating the spread of the virus and protecting the staff and prisoners. Defendant has presented no evidence indicating that NEOCC's current procedures are ineffective. To the contrary, the record suggests that NEOCC's procedures may be effective in preventing the spread of the virus considering no prisoners have tested positive, despite the fact that four staff

persons have contracted the virus. *See COVID-19 Inmate Testing*, Ohio Dep't of Rehabilitation & Corrections (May 11, 2020), http://coronavirus.ohio.gov/static/DRCCOVID-19Information.pdf.

### III. CONCLUSION

Around the country, COVID-19 presents a serious and alarming threat to public health and safety. This threat is especially acute in prisons, where social distancing and other preventative measures may not be possible. The seriousness of this threat and the speed with which this disease spreads demands that the government do everything it can to protect all inmates. That is to say, the court takes seriously Defendant's concerns about COVID-19 and the fast-changing dynamics of the ongoing pandemic. However, the court finds that Defendant's speculation and generalized fears regarding COVID-19 are insufficient to justify his temporary release.

Accordingly, for the foregoing reasons, the court denies Defendant's Motion (ECF No. 16).

IT IS SO ORDERED.

/s/ SOLOMON OLIVER, JR.
UNITED STATES DISTRICT JUDGE

May 27, 2020